Now that we're in a good mood, who's next? Mr. Henry. Good morning. May it please the court, David Henry on behalf of Appellate Network Apparel. You're reserving five minutes, right? Yes, sir. Okay. Go ahead. In prior oral arguments before this court, counsel have been asked to opine on what is an idea, what is an abstract idea, what is a claim drawn to. So if I may be so bold as to explain my basis of arguments today on those premises briefly. Your honors, we believe that an idea underlying a claim is essentially a need-solution dichotomy. It's we propose to meet this need in this way. Claims drawn merely, and we believe that these that I'm setting out are consistent with all the authority coming from this court and the United States Supreme Court, of course. A claim that's drawn merely to an abstract idea is one that sets out that need-solution dichotomy in a context that doesn't need it. In other words, the need is not unique to the context in which it's to be applied, such as applying it on a computer, for example. That's not true. A lot of these cases where we ruled them ineligible by doing something on a computer, the fact that it's done on a computer is what makes it possible. It still doesn't make it eligible. There are certain calculations that are impossible to be performed by a human mind in a speed that would enable the use of that abstract idea to be any actual use in the marketplace. It doesn't render them eligible just because it's useful. No, absolutely, Your Honor. I completely agree. What I mean to say is that the context in which it's rendered doesn't need—in other words, the computer is not made better because the solution is applied on a computer. I believe we're saying the same thing, and I apologize if— How does this make the computer better? Pardon me? How does this make the computer better? This— This doesn't do anything to the structure of the computer. All this does is make somebody respond to a message. Well, Your Honor, if you—it comes down to defining the context, defining what it is—the environment in which the invention is being practiced. In this case, if you think of— And let me back up. You don't even agree that this is combined to a computer, right? We believe it's combined to messaging in—over networks. Absolutely, Your Honor. And computers are certainly involved. But it can be anything else that's a network. Well, it would have to be— We would disagree that this would certainly—that this would encompass telephones, for example, because the telephone—the example that's been used earlier in this court involved, you know, a customer not paying their bill, therefore their service is limited, et cetera. You can't correlate the various elements of these claims to that scenario. You know, and in this case— What in Claim 1 excludes that? Sure. Suppose it's—from this point on, when the red light's flashing, you can only call 911. Well, Your Honor, one of the things— Doesn't that read on your head? I believe one of the things, just one, that would distinguish from Claim 1, the telephone example, is in Claim 1 you have the system itself, components of the system itself, responding to the issuance of the message. The system itself is responding to acknowledgment of that issue. Now, in the telephone example, if a customer doesn't pay their bill, it's—the system doesn't react to the fact they were sent a bill and limit the service. I mean— Well, I just gave you that example. You have a red light on your phone that flashes, and it means from now on you can only call 911. It's limiting it until you pay your bill. Well, but then when you pay your bill, the system itself, again, unlike the 079 claims, is not returning to the prior. Ultimately, that might ultimately occur. You pay your bill, and somebody flips a switch somewhere whereby your service is returned, but the system is not responding to that as required we would submit in Claim 1. It is the interrelation of the sending and all these components in the access rules. The message is sent. The system creates a limit on bandwidth in this instance. The customer acknowledges the message, and the system responds by returning the service. I still don't see how that excludes a telephone. It may not include paying, but it may include getting a voicemail message and sending a voicemail response to that message. That's over the system. Well, Your Honor, at this point, there's— I mean I'm not sure that this matters much that you're—whether it's limited to a computer or not because it's still an abstract idea. Well, Your Honor, we believe because the context of the claim is confined to the use of the internet or use of networks as a messaging medium, that that is not so broad as simply a computer. And in that context, in the context of the internet or networks being used as a messaging medium, applying these methods within that context, in fact, improves the tool to use language of prior precedent here. It improves the system. Use of our method improves— How does it improve the system? Well, it improves it because the problems— Does it make it faster? Pardon me? Does it make it faster? Well, it makes it a better tool. In other words, if we think of these networks as tools for sending messages— But that's exactly what is not eligible under 101, using a computer as a tool to make an abstract idea better. Yes, Your Honor, but when you make that tool better, that is precisely what's been distinguished. You've described every 101 case we get. Somebody comes in and says, well, I've got a system here, and it makes things better, and I use a computer to do it, so it makes the computer better. Oh, well, Your Honor, we would respectfully disagree in the sense that if you think of cases such as Alice— By making somebody watch a computer or a commercial or something to get free—or get further access. That made, in some sense, the system better because you got more money from it. Well, but Your Honor, it didn't make the system better. It made the use of it better. It's much like describe the distinction— Isn't that the same exact thing? No, Your Honor. We were—I'm sorry. What's making it better about the system? The system stays the same. The computer doesn't change. The network doesn't change. The operation doesn't change. What you're doing is using it to make sure somebody responds to a message. Your Honor, we would submit that the network set up with the components that we've described and the access rule do in fact change the network. They change its operation. They take it from a place where merely sending a message to a recipient, you hope they get it, you hope they respond, to within the system itself, modifying the system itself, it changes. It is now a system that can be used to incentivize acknowledgment of the message. And so, Your Honor, we believe, again, that gets back to is it an abstract idea or not an abstract idea? In an ultramercial, when they had a pop-up and said, if you watch this, you get further content or something, it incentivized exploring ads that generate revenue. Yes, Your Honor, but in that case, the— For the system. Yes, Your Honor, but in that case, the exchange of copyrighted material and exchange for looking at advertisement was something that was done both within and outside the context. This was not a problem or a challenge limited to that context, and that's what made it abstract. It was not tethered to a need within the context. In our case, we have a— It's not tethered here either. There's nothing that specifically tethers this to the computer. This is just like if you don't pay your—if somebody sends you a letter through the mail and says, if you don't pay your bill, we're going to cut off your service. But, Your Honor— You're not making the system run more efficiently. You're making collections run more efficiently. We are making the network as a messaging platform work better and have more features. In other words, if you stop at the level of computer, absolutely, but our claims don't do that. They go further. They define a network used as a messaging system and platform, and that is why it narrows it from the abstract, something that happens everywhere. I mean we argue respectfully, Your Honor, that before emails existed or in a context where emails or electronic messages don't exist, there's no need to ensure that an electronic message is acknowledged. It's the nature of the context in which our solution has particular value. But before email, there was certainly a need for mail to be acknowledged. That's the point of certified mail, return receipt, everything like that. This is all common—done. You're just transferring a return receipt to a computer and ratcheting up by saying if you don't return the receipt, we're going to cut off your access. Well, in the certified mail example, for example, we don't limit the overall mail service. We simply do not deliver that article, which by the way, certified mail only proves that you received the envelope in which the message was actually contained. There's no verification whatsoever that the customer actually opened or read what was in the envelope. And in our particular case, when we're talking about— You're in your rebuttal time. Keep going. Oh, I'm sorry. It's up to you. Well, no, we'll preserve. Thank you. Thank you, Your Honor. Thank you. May it please the Court. Tracy Willey for Airwave Networks. When I first looked at this patent, when I got involved in this case last year, the first thing that comes to mind is I'm a mother. I've got four end users. Their names are Alex, Andrew, John, and Michael. And I have access rules for them. They can watch TV. They can play on the computer. They can do just about anything unless they have a zero come in from a teacher. Then I apply the second access rule. They have limited access to their computer, to their car, to whatever it is that I can limit them. If I walk in and they're still playing games on their computer because I said, okay, I'll give you another access rule. You can get on the computer, but only for homework. And I come in there and I see that you are doing something other than homework. Guess what? You're off the computer for two weeks. What this system that they've designed in this patent is I think the trial court was being generous to say that it was a longstanding commercial practice. It was a fundamental economic concept. That's true. Telephone companies, cable companies have been doing this for years. But this goes further than that. This is a classic abstract idea that someone has just come up with a system, and a very basic system. I mean my system with my children is more complex than this one, but it's the same idea. It's the same general concept. What they've come up with is- You raised the certified mail example that you used in the Red Breeze. Was that ever raised or discussed with the court below? Yes, Your Honor. That issue was raised as well. The telephone company analogy was raised. The cable company analogy was raised. Even the timeout solution, which was a book written way back when about how to parent your children, was raised with the court below. Where was that certified mail? Let's see. I'm not sure exactly where that would have been raised, Your Honor. It may have been in the actual transcript of the Alice hearing. That's where I believe I would find it. I don't remember the judge. I believe in the- Judge Manske, I know, referred to the telephone and cable issues, because that's actually in their preferred embodiments in their patents. I think the judge's opinion also discussed this. I think it also appears there, because I know we discussed it at the Alice hearing, and I think it showed up in the opinion as well. But it was in the hearing, okay. Yes, Your Honor. So my feeling is that this is sort of the more classic abstract idea that I don't think this court has previously addressed one that doesn't have more of a question to it. So you'd be surprised. Well, maybe so. But this is not as sophisticated or technical as Ultramershal was, for example. This is not even into that realm where, hmm, is it really changing something within the computer system and making something different happen? The way they have drafted this claim, and if we follow the instruction of this court, we look to the claim, and the claim is extremely, extremely broad. The preferred embodiments they talk about, extremely broad. They could say the network management device could be a telephone system, a cable system, any kind of networking device. I'm thinking you could substitute me for a network device because it doesn't necessarily have to be. I can have a button in front of me that makes me be the network device if you want to connect me into my computer system at home, which we do. I mean this is a day and age that this has been a longstanding principle where the parents have control over what their kids watch. I can shut off the TV. That's my controller. I've got a button right there. I don't think that their claims reach the same level of question that the last six months or a year worth of Alice and one-on-one type analysis cases have. What do you say in response to the argument by network apparel that they can vary the level of restriction by degrees and that makes it different? Well, it's interesting that they talk about that, but if you again look at the claim, it just says the second access rule is more restrictive than the first access. More means could be zero, could be one, could be zero. So I don't think the claim supports that argument. I don't think going to the next step of Alice, I don't think there's anything that provides the specificities that would bring this to the next level and cause us to revisit the issue of whether it's patent eligible. It simply doesn't have the same technical issues that were specifically asserted to improvement in that field like improvement in computer animation. There's no magic to this. There's no highly technical type language that makes us question like is this something new and something different that they've added that something more to it. Anything else? I'm sorry? I've said anything else. I just think that this falls into the broader category of the cases that you all have decided that is an abstract idea implemented on a computer system. I think it falls into that bigger category of those kind of cases that has been decided by this court. This, I would think, would be the type of case that you might consider for a Rule 36 judgment, that sort of thing. I don't think it adds anything to the current status of how we evaluate one-on-one cases. Those are my thoughts on it, Your Honors. Thank you. Thank you. You have several minutes, Mr. Henry. Thank you, Your Honor. Appelli mentions the breadth of the claims in apparent reference to preemption, which Allison, certainly in the recent decision of McGrow or MRCO, I'm not sure which it is, tells us preemption is ultimately the issue. And if we look at it from that lens— I don't think it says that preemption is ultimately the issue. I think it says preemption is one of the questions. Okay. I think we've repeatedly said that even if it doesn't preempt the whole field, it can still be abstract and ineligible. Yes, Your Honor. Indicative of the significantly more in our claims would be the ways that you would, for example, at face value, get around our claims. Do we preempt? How would you, for example, not be within the scope of our claims and yet still control messaging over the internet? You could have, for example, repeated sending of messages. You could just pound—perhaps that's a regional phrase—over and over, send the same message. You could send a message with a subject line that had a cash reward. There are any number of ways you could still manage messaging over networks without being within the scope of the claims of this patent. It is limited. It is not preemptive. And again, I would respectfully urge this improves not computers. That's not the issue because that's not the context that the claims define. They improve networks when used as a tool for messaging. They increase the utility of those. The network is not merely used as a vehicle for our process. Our process is irrelevant outside of a network because we are limited to messages on a network. We have a network controlling device. We have access rules that refer to—I know we're not at the claim construction stage, but bandwidth. That's clearly supported within the specification. Your Honor, we're at the 12B6 level. And I know you know that, but at this stage we don't have evidence to show that what we are doing in this context is not conventional. There's nothing to show in the record that we're doing anything other than what the patent claims, which is something beneficial to the industry, adopted by and lauded by the industry, needed an improvement over the prior. If we had been at other than a 12B6, perhaps we would have evidence of that, but we don't. And so we would respectfully urge at this point that this court reverse and remand for further proceedings. Thank you, Your Honor. Thank you, counsel.